IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHOHREH REZAEI,                        )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )        CIVIL ACTION NO. 11-0467-N
                                       )
MICHAEL J. ASTRUE, Commissioner        )
Of Social Security,                    )
                                       )
        Defendant.                     )

<u>ORDER</u>

In this action, plaintiff appeals the final decision of the Commissioner denying her claim

for Social Security Income benefits.  The parties have consented to the exercise of jurisdiction by

the undersigned Magistrate Judge (doc. 17) and this action has been referred (doc. 18) to the

undersigned to conduct all proceedings and order the entry of judgment.  Oral argument was held

before the undersigned on June 27, 2012, at which Attorney Colin Kemmerly appeared on behalf

of the plaintiff and Assistant United States Attorney Patricia Beyer represented the

Commissioner.  After careful consideration of the record, including the briefs of the parties and

the arguments of counsel, it is ORDERED that the decision of the Commissioner be

REMANDED for further proceedings consistent with this opinion.

<u>Procedural History</u>

Plaintiff filed her application for SSI benefits on June 5, 2008, claiming a disability onset

date of June 7, 1997. After her claim was initially denied on July 31, 2008, plaintiff requested a

hearing which was conducted before an Administrative Law Judge ("ALJ") on November 2,

2009.  Following an unfavorable decision, plaintiff timely sought review from the Appeals

Council, submitting additional medical records from the Stanton Road Clinic, AltaPointe, and

USA Department of Pathology and LabCorp (exhibits 20F, 21F, and 22F). The Appeals Council

denied review on June 17, 2011, rendering the ALJ's denial the final decision of the

Commissioner.  This appeal timely followed.

<u>Issues</u>

      Plaintiff raises the following claims in this appeal:

1.   That the ALJ erred by rejecting the opinions of Dr. Blaine Britt and Dr. Marieanne

     Saitz on the basis, in part, on supposition that the doctors may have given their

     opinions based on sympathy for plaintiff or to avoid friction with their patient,

     without acceptable medical evidence to support the ALJ's findings concerning

     plaintiff's limitations; citing 20 C.F.R. § 416.1453. [1]

2.   That the ALJ erred in rejecting plaintiff's claim that she could only obtain 9 Imitrex

     pills per month on the basis under her insurance based, in part, of his finding that

     there were community clinics in Mobile, Alabama, where plaintiff lived, which

     offered reduced cost or free medical treatment for indigent persons, without evidence

     in the record regarding the availability of such reduced-cost care in that locale; citing

     20 C.F.R. § 416.1453.

Scope of Judicial Review

      A limited scope of judicial review applies to a denial of Social Security benefits by the

Commissioner. Judicial review of the administrative decision addresses three questions: (1)

whether the proper legal standards were applied; (2) whether there was substantial evidence to

support the findings of fact; and (3) whether the findings of fact resolved the crucial issues.

---

[1]   The pertinent provision of that section provides "[t]he administrative law judge must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record." 20 C.F.R. § 416.1453(a).

Washington v. Astrue, 558 F.Supp.2d 1287, 1296 (N.D.Ga. 2008); Fields v. Harris, 498 F.Supp.

478, 488 (N.D.Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or

substitute its judgment for that of the Commissioner. If substantial evidence supports the

Commissioner's factual findings and the Commissioner applies the proper legal standards, the

Commissioner's findings are conclusive. Lewis v. Callahan, 125 F.3d 1436, 1439-40 (11th Cir.

1997); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d

1520, 1529 (11th Cir. 1990); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Hillsman v.

Bowen, 804 F.2d 1179, 1180 (11th Cir. 1986); Bloodsworth v. Heckler, 703 F.2d 1233, 1239

(11th Cir. 1983). "Substantial evidence" means more than a scintilla, but less than a

preponderance.  In other words, "substantial evidence" means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion and it must be enough to

justify a refusal to direct a verdict were the case before a jury. Richardson v. Perales, 402 U.S.

389 (1971); Hillsman, 804 F.2d at 1180; Bloodsworth, 703 F.2d at 1239. "In determining

whether substantial evidence exists, [the Court] must view the record as a whole, taking into

account evidence favorable as well as unfavorable to the [Commissioner's] decision." Chester v.

Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the

contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is

substantially supportive evidence" of the ALJ's decision. Barron v. Sullivan, 924 F.2d 227, 230

(11th Cir. 1991.  In contrast, review of the ALJ's application of legal principles is plenary. Foote

v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995); Walker, 826 F.2d at 999.

Statutory and Regulatory Framework

      The Social Security Act's general disability insurance benefits program ("DIB") provides

income to individuals who are forced into involuntary, premature retirement, provided they are

both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security

Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general

public assistance measure providing an additional resource to the aged, blind, and disabled to

assure that their income does not fall below the poverty line. Eligibility for SSI is based upon

proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However,

despite the fact they are separate programs, the law and regulations governing a claim for DIB

and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the

purpose of determining whether a claimant is disabled.  Patterson v. Bowen, 799 F.2d 1455,

1456 n .1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the

meaning of the Social Security Act which defines disability in virtually identical language for

both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a),

416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of not
> less than 12 months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or
> mental impairment" is one resulting from anatomical, physiological, or
> psychological abnormalities which are demonstrable by medically acceptable
> clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3),
> 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process

to determine whether a claimant is entitled to benefits. See 20 C.F.R. §§ 404.1520, 416.920

(2010).

(1) Is the person presently unemployed?

(2) Is the person's impairment(s) severe?

(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[2]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See* Phillips v. Barnhart, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. Id.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). Id. at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. Id. It also can contain both exertional and nonexertional limitations. Id. at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. Id. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app. 2 ("grids") ,or hear testimony from a vocational expert (VE). Id. at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each

---

[2] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

factor can independently limit the number of jobs realistically available to an individual. <u>Id</u>. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." <u>Id</u>.

<u>Findings of Fact</u>[3]

Plaintiff was born in February, 1960, and was 49 years of age at the time of the hearing before the ALJ.  She was born and raised in the Islamic Republic of Iran, where she lived until moving to the United States in 1995.  She has the Iranian equivalent of a high school diploma. She has no prior employment history.

The ALJ found that plaintiff suffers from 'severe' impairments of migraines and major depressive disorder.  The ALJ found that these impairments, individually or in combination, did not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.§§ 416.920(d), 416.925 and 416.926). The ALJ found that, *if* plaintiff had rheumatoid arthritis[4], it did not give rise to significant limitations to her ability to work.

Analysis

<u>Administrative Notice</u>

The court considers plaintiff's second assignment of error first.  Plaintiff was diagnosed as having migraine headaches at Infirmary West in Mobile, Alabama on December 30, 2007, after seeking treatment for a headache.  She improved with medication and was released. Thereafter, plaintiff received treatment, consisting of prescriptions for Imitrex and Zanaflex, for

---

[3] Factual findings are drawn from the Administrative Record (doc. 10), particularly, where uncontested, from the final decision of the ALJ (doc. 10 at 15-24).  Page references are to the Administrative Record unless otherwise stated.

[4] Plaintiff mentioned the condition to the consultive examiner and one of plaintiff's primary care physicians mentioned that diagnosis in an opinion letter.  Plaintiff does not challenge the ALJ's finding that, if she suffers from rheumatoid arthritis, that condition does not give rise to a 'severe' impairment.

her migraines at the Stanton Road Clinic in Mobile, Alabama.  Plaintiff testified that, under her

insurance plan, she could get no more than nine Imitrex pills per month,[5] but that she had

migraines 'daily'.  She stated that sometimes she had to take 3-4 Imitrex per week, and that when

she ran out, she used Advil and relied on the second medication, presumably Zanaflex, which she

takes every night.[6] The ALJ found that

> the medications have been relatively effective in controlling the claimant's
> symptoms.  On July 3, 2008, the claimant reported that she feels better on
> medication and reported a decrease in frequency of her headaches.  On January
> 22, 2009, the treatment record notes that the claimant's headaches had greatly
> improved while on medication.  (Exhibit 10F).  Additionally, the July 2, 2009,
> treatment note shows that the claimant's headaches worsened when she ran out of
> her medication.  …[T]he medical evidence of record notes the claimant's
> continued complaints of migraines….The claimant testified that her medications
> relieve her headaches, and that she is able to care for her children when taking the
> prescription medication.[7]

---

[5] She testified that her doctor prescribed more, but that she could only receive nine pills.

[6] Perhaps because plaintiff is not a native speaker of English, the transcript refers to Isonofrex. The court has been unable to find any available migraine drug with that name and presumes that she refers to the second medication the medical records show to have been prescribed to her, Zanaflex. Zanaflex [generic name tizanidine] is a skeletal muscle relaxant rather than a selective serotonin receptor agonist like Imitrex, *www.nih.gov/pubmedhealth*, though it may sometimes be prescribed for off-label use in treating migraines. Plaintiff testified that, when she ran out of Imitrex, she would use Aleve and Isonfrex [Zanaflex] nightly.  She testified that they worked the same as Imitrex. Doc. 10 at 40.

[7] Plaintiff's testimony was slightly different from the summary by the ALJ.  Plaintiff testified that she continues to care for her children regardless of the pain.  Her testimony concerning her activities of daily living do not so clearly demonstrate a significant reduction in migraine symptoms as a result of her medication as the ALJ appears to find.  After the ALJ asked about her activities with medication, such as cooking for her children and picking them up, the following exchange occurred.

Q:  How often is it that you have one where you can't do that, where you can't help your kids, say, cook dinner?

A:  No.  I do it with headache, working for kids.  Making food and take care of them.

Q:  Okay.  So you, even with the headaches –

A:  Yes.

Q:  you still do that?  Okay.

(Continued)

Doc. 10 at 20.

With regard to plaintiff's testimony that she could only get nine Imitrex pills per month[8], the ALJ found, *sua sponte*, that there were medical service providers in Mobile, Alabama, which provide reduced-cost medical care for those who lack sufficient funds or insurance.  On that basis, the ALJ rejected plaintiff's testimony concerning limited availability of Imitrex.  The plaintiff objects to the ALJ's finding concerning the existence of medical clinics in the absence of supporting evidence in the administrative record.

It is well-established that "poverty excuses noncompliance."  Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988)(noting every circuit that has considered the issue has come to this conclusion and citing cases).  It has been held that the Commissioner bears the burden to produce evidence of unjustified noncompliance.  See Preston v. Heckler, 769 F.2d 988, 990-91 (4th Cir. 1985).

Other courts have addressed the propriety of an ALJ making such a "finding" by judicial [administrative] notice.[9]  The Middle District of Alabama had one such case.  In   Traylor v.

_____

A:  I do it with headache.

Doc. 10 at 38-39.

[8] The ALJ did not ask plaintiff whether she was aware of or had tried obtaining medication from any such clinic.  Nonetheless, the ALJ found that "there is no evidence that the claimant has sought treatment from any of these facilities, or that she has even inquired about the availability of such treatment."  (p. 22)  The court notes that "there is a 'basic obligation' on the ALJ in these nonadversarial proceedings to develop a full and fair record, which obligation rises to a " 'special duty ... to scrupulously and conscientiously explore for all relevant facts' " where an unrepresented claimant has not waived counsel."  Broz v. Schweiker, 677 F.2d 1351, 1364 (11th Cir. 1982); *see* Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring).

[9]  Plaintiff's difficulty was obtaining the medication, not obtaining the prescription or other treatment.  The ALJ's judicial notice involved the availability of medical care, not
(Continued)

8

Astrue, 2010 WL 920114 (M.D.Ala. 2010), that court remanded an adverse benefits determination to the Commissioner for further proceedings in part because the ALJ had made a similar finding. As the court stated,

> It may be true that there are community clinics near New Brockton, where plaintiff lives, which offer free or low-cost medical care for patients who lack financial means to otherwise obtain such care. **However, the ALJ may not consider this "fact" unless there is some evidentiary basis in the record to support it, or it is an appropriate matter for judicial notice**. That free or low-cost medical services were available to the plaintiff in his area is not a matter of such common knowledge that the court may judicially notice it, and there is nothing in the administrative record which provides evidentiary support for this conclusion. *See* Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997) ("[T]aking of judicial notice of facts is, as a matter of evidence law, a highly limited process.").

Traylor, at *4 (emphasis added).

Additionally, in Heckford v. Astrue, 2011 WL 7092593 at *6, n. 11 (W.D.La. 2011), the district court rejected the ALJ's taking of "judicial notice that indigent care is available for the asking ..." That case involved an ALJ's holding that failure to take prescribed medication precluded relief under Social Security Ruling 82-59. The Heckford court noted that "[i]f ... the claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Quoting* Taylor v. Bowen, 782 F.2d 1294, 1298 (5th Cir. 1986). The court stated that

> the ALJ first should ascertain that the claimant was aware of these sources and, if so, why he did not take advantage of them. *See* Social Security Ruling 82–59 (the

---

specifically the availability of free or reduced-cost medication, and did not provide adequate detail to support the availability of free medication of the kind and amount needed by plaintiff. Given that the ALJ in the instant case and in the two other cases cited above addressed the existence of free medical care in relation to a claim that plaintiff could not afford medication, it seems likely that the ALJ took judicial notice of the existence of clinics which provided not only free medical care but free pharmacy services as well; however, that inference is not clearly stated in the ALJ's ruling.

> claimant "will be *afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so.*" *Id.* (emphasis added); *see also* 20 C.F.C. § 416.930 ("If you do not follow the prescribed treatment *without a good reason,* we will not find you disabled ...")

<u>Id</u>.  In the instant case, not only did the ALJ not identify any clinic in Mobile which would have solved plaintiff's problem, she did not make her finding at the hearing and did not give notice or otherwise allow plaintiff a chance to test or challenge the basis for her judicial notice, and did not determine whether plaintiff was aware of such purported alternatives.

The court finds that plaintiff's second assignment of error is well-taken; the ALJ improperly took judicial notice of facts not in evidence.  The existence of clinics in Mobile Alabama which provide free or reduced cost Imitrex for people in plaintiff's position is not a matter of such common knowledge that this reviewing court may accept his finding without any supporting detail.  Further, it appears from a review of the ALJ's decision that this finding was material to the determination that plaintiff's migraine headaches were not disabling. Accordingly, this case should be remanded to the Commissioner for further development.

<u>Assuming doctors' motivation</u>

In light of the court's determination that plaintiff's second assignment of error, the court does not reach a final conclusion on plaintiff's first issue: that the ALJ erred by purportedly imputing particular motives to the plaintiff's treating physicians without support in the record. Nonetheless, plaintiff's challenge to the ALJ's manner of dismissing the opinions of plaintiff's treating physicians should be addressed by the ALJ on remand.

 Plaintiff has had two primary treating physicians relevant to her claim: Dr. Blaine Britt at the Stanton Road Clinic treated her for migraines and Dr. Marianne Saitz at Altapointe Health Systems treated her for depression.  Dr. Britt provided a hand-written opinion letter (p. 353) dated October 28, 2009 in which he stated that plaintiff

> has severe migraine headaches that are persistent despite medical management.
> They require her to ly [sic] down for 2-4 hours when they occur and they occur
> daily. [10]   For this reason primarily it is difficult for her to maintain a job.  This is
> further complicated by her depression and rheumatoid arthritis.

Similarly, Dr. Saitz provided an opinion letter dated July 29, 2008, stating "[d]ue to her

diagnosis of Major Depression Shorah Rezaei is unable to work in any capacity.  I do not

anticipate her ever being able to work in any capacity."

The record also contains the report of a consultive examiner, Jack Carney Ph.D, a

licensed psychologist who examined plaintiff on August 11, 2009.  Dr. Carney diagnosed

plaintiff as having major depression, but concluded that the condition was likely to respond

favorably to treatment within six to twelve months.  Doc 10 at 328.  He did not identify

plaintiff's symptoms or gauge their severity, did not address her limitations resulting from those

symptoms, and did not provide a medical basis for his opinion that she was likely to respond to

treatment in that 6-12 month timetable.

In addition, a state agency psychologist, Ellen Eno, Ph.D., reviewed the records

concerning plaintiff's depression which had been filed with the agency at that time and

concluded that plaintiff could understand, remember and carry out short, simple, one- and two-

step instructions; attend and concentrate for at least two-hour intervals, and that plaintiff should

have infrequent contact with the public and infrequent workplace changes.

In addressing the opinions of Dr. Britt, the ALJ stated that she

---

[10] Though the ALJ posed a hypothetical to the VE about an individual whose health
interfered with attendance on a regular basis, she placed no limitation on plaintiff's ability
regularly to attend work and satisfy its production requirements on a forty-hour-per-week basis.
The ALJ notes that medication "helps with her headaches;" it appears that the ALJ took this
statement to mean that, if plaintiff had enough Imitrex, she would have no significant regular
headache pain.  Such a conclusion was not expressly made and, if the ALJ drew such an implicit
conclusion, support in the record is questionable.

does not give significant weight to the portion of Dr. Britt's opinion in which she states that the claimant is permanently disabled.  Social Security Rulings 96-2p and 96-5p indicate that treating physician opinion  on issues reserved to the Commissioner of Social Security are never entitled to controlling weight or special significance.  Since Dr. Britt's opinion in Exhibit 14F concerns an issue (whether the claimant is disabled) reserved to the Commissioner, it cannot be given controlling weight.  The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another.  Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension.  While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

There was no consultive examination of the plaintiff which considered her migraine headache pain.  The ALJ held that the medical evidence concerning plaintiff's depression showed that she suffered mild to moderate symptoms of depression, based primarily on the report of Dr. Carney's consultive examination.  While the ALJ's references to the likelihood that both of plaintiff's treating physicians gave their opinions due to a bias for the plaintiff might charitably be read as nothing more than idle supposition seeking to explain the underlying finding that those opinions were not credible, such assertions also may more reasonably be seen as an attempt to explain the ALJ's thought process in rejecting those opinions in favor of opinions from non-treating sources.  The argument is unrelated to any specific fact in this case, and appears to describe a general prejudice against the opinions of treating physicians which would be at odds with the regulations and rulings of the Commissioner.  In Horlick v. Astrue, 2012 WL 1410109 at *5-6 (W.D.Wash), the district court criticized a similar argument by the ALJ in that case.

The language implicitly assumes that physicians who actually examined and treated the plaintiff would have a bias either for or against the plaintiff, which is why the ALJ gave extra weight to the non-examining, non-physician report of the SDM. This implicit assumption introduces two fundamental errors. First, there is no basis to suggest (implicitly or explicitly) that any of the examining or non-

examining physicians demonstrated any bias in favor or against the plaintiff. *Compare, e.g.,* <u>Nguyen v. Chater</u>, 100 F.3d 1462, 64–5 (9th Cir. 1996). Second, taken to its logical extreme, the ALJ's reasoning would mean that a nonexamining non-physician report was entitled to more weight than the report of an examining physician, contrary to well-established Ninth Circuit law. *See* <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007).

As the <u>Horlick</u> case was to be remanded on other grounds, the court simply recommended that the Commissioner assure that his determination of the credibility of the treating sources opinion was based on the hierarchy of medical evidence.  The court finds it appropriate in this case to take as similar approach.

<u>Conclusion</u>

For the reasons set forth above, it is hereby ORDERED that this case be REMANDED to the Commissioner for further proceedings consistent with this opinion.

DONE this the 19th day of July, 2012.

/s/  Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE